Carroll Township, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources and the Borough of Dillsburg and the Dillsburg Borough Authority, Respondents.

Argued September 14, 1979, before Judges MEN-
CER, BLATT and MACPHAIL, sitting as a panel of three.

*Laurence T. Himes, Jr.,* with him *Russell F. Griest,* for petitioner.

*Eugene E. Dice,* Assistant Attorney General, for respondent.

*P. Nelson Alexander,* with him *Alexander & Alexander,* for intervenors.

OPINION BY JUDGE BLATT, January 21, 1980:

This is an appeal by Carroll Township (Township) of York County from an adjudication of the Environmental Hearing Board (Board) affirming an order of the Department of Environmental Resources (DER) which directed the Township to implement a sewage facilities plan.

This case had its origin when, in 1974, the Township submitted to the DER a comprehensive facilities plan in accordance with the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §750.1 et seq. (Sewage Facilities Act). The plan, which called for the construction of sewage lines to connect portions of the Township's sewage system to that of a neighboring municipality, was approved by the DER and scheduled for gradual implementation. For reasons which are not clearly revealed in the record, the Township underwent what the Board below called "an official change of mind" about its plan and it then halted implementation. The DER responded with an order directing the Township to commence implementation, and the Township appealed to the Board, contending that it had no present or future need for the facilities previously proposed in its plan. After a hearing, the Board affirmed the DER order on the basis that the DER had sustained its burden of showing a need for the facilities. The Township contends in its appeal here that the Board's

findings were not based on substantial evidence.. We cannot reach this issue, however, because we believe the case must be resolved on jurisdictional grounds.

Section 5(a) of the Sewage Facilities Act requires each municipality of the Commonwealth to prepare a comprehensive sewage facilities plan for submission to the DER for approval or disapproval. 35 P.S. §750.5(a). If the DER approves the plans, Section 10 of the Act[1] requires implementation. The municipality is not locked into its initial plans after approval, however, because Section 5 of the Sewage Facilities Act provides that the municipality may revise its plans at any time, although the revisions are again subject to the approval of DER:

> (a) Each municipality shall submit to the department an officially adopted plan for sewage services for areas within its jurisdiction within such reasonable period as the department may prescribe, and shall from time to time submit revisions of such plan as may be required by rules and regulations adopted hereunder or by order of the department: Provided, however, That a municipality may at any time initiate and submit to the department revisions of the said plan. Revisions shall conform to the requirements of subsection (d) of this section and the rules and regulations of the department.

35 P.S. §750.5(a).

---

[1] Section 10 of the Sewage Facilities Act, 35 P.S. §750.10, provides in part:

> The department shall have the power and its duty shall be:

> . . . .

> (3) To order the implementation of official plans and revisions thereto.

In the recent case of *Kidder Township v. Department of Environmental Resources,* 41 Pa. Commonwealth Ct. 376, 399 A.2d 799 (1979), we held that a municipality, which contended that its official, approved plan was unsuitable, could not appeal the DER's implementation order to the Board; rather, the proper course for the municipality was to revise its plans pursuant to the specific revision procedures of the Sewage Facilities Act. If no other issue were involved, therefore, *Kidder, supra,* would clearly control, and, as the DER contends here, the Board would have been incorrect in having heard an appeal concerning the substantive merits of the approved plan.[2]

The complicating factor in this case is the Township's assumption that the DER's implementation order was based not only on the Sewage Facilities Act, but also on The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §691.1 et seq., and that the DER must fulfill its evidentiary burdens under The Clean Streams Law.

The DER admits that its authority to enforce the Township's plan could be based either on the Sewage Facilities Act or on Section 203 of The Clean Streams Law, which provides:

[I]f the department finds that the acquisition, construction, repair, alteration, completion, extension or operation of a sewer system or treatment facility is necessary to properly provide for the prevention of pollution or prevention of

---

[2] Normally, the recognized procedure for the successful party below, here DER, to raise an error of the lower adjudication in response to an appeal by the unsuccessful party, is to file a cross-appeal. Jurisdictional issues like that here, however, can be raised by the successful party below without a cross-appeal. *Pennsylvania Human Relations Commission v. Alto-Reste Park Cemetery Association,* 453 Pa. 124, 306 A.2d 881 (1973).

a public health nuisance, the department may order such municipality to acquire, construct, repair, alter, complete, extend, or operate a sewer system and/or treatment facility. 35 P.S. §691.203.

And, under The Clean Streams Law, a municipality may appeal such an implementation order of the DER to the Board pursuant to the general administrative procedures of Section 1921-A of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* added by the Act of December 3, 1970, P.L. 834, 71 P.S. §510.21. In cases construing municipal appeals to the Board under The Clean Streams Law, we have held that the DER has an affirmative burden of showing that the municipality needs or will need the new facilities which the DER has ordered it to implement. *Ramey Borough v. Department of Environmental Resources,* 466 Pa. 45, 351 A.2d 613 (1976); *Township of Monroe v. Department of Environmental Resources,* 16 Pa. Commonwealth Ct. 579, 328 A.2d 209 (1975).

Faced here with inconsistent procedures under the Sewage Facilities Act and The Clean Streams Law, the Board determined that under The Clean Streams Law and *Monroe, supra,* the implementation order was valid only if the DER could show a present or future need for the new facilities. In its order the Board stated:

We then must decide whether the plan revision procedure is the only way in which a municipality can seek to avoid the consequences of what it now deems to be a bad [Sewage Facilities Act] decision. In the case of Township of Monroe v. Comm. of Pa., DER, [supra], a township refused to enter a joint sewer agreement because it believed there was no present need,

and that there would not be sufficient future need for public sewers, preferring instead to continue reliance on septic tanks. The court, finding no substantial evidence of future need, reversed our decision which had upheld the DER order. We believe here DER should carry a much lighter burden than in the Monroe Township case, but that still appellant should not be foreclosed, in an appeal from an implementation order, from showing that changed circumstances now indicate there are no present or future needs which require public sewers.

The critical issue, therefore, is whether or not there exists alternative procedural courses under the Sewage Facilities Act and/or The Clean Streams Law so as to permit the municipality here concerned, faced with an order of the DER requiring the implementation of the municipality's official plans under the Sewage Facilities Act, to avoid the order either by submitting a revised plan to the DER pursuant to the Sewage Facilities Act, or as the Township seeks here, by in effect abolishing the entire plan through an appeal of the order to the Board, alleging a failure of the DER to fulfill its burden under The Clean Streams Law of showing a present or future need for the facilities.

We do not believe that such alternative remedies are possible. The applicability of the Sewage Facilities Act does not depend, as does that of The Clean Streams Law, on whether or not the municipality is or will be polluting. On the contrary, the Sewage Facilities Act is mandatory on all municipalities, requiring each municipality of the Commonwealth to submit a comprehensive plan for the development of present and future sewage treatment facilities.

The declaration of policy in Section 3 of the Sewage Facilities Act, 35 P.S. §750.3, indicates that man-

datory municipal planning, as opposed to contemporaneous or ad hoc reactions to changing circumstances, is necessary to accomplish the stated goals of achieving technical competency within local governments, Section 3(5), 35 P.S. §750.3(5), the use of the best available technology, Section 3(6), 35 P.S. §750.3(6), and increased intermunicipal cooperation, Section 3 (4), 35 P.S. §750.3(4). Section 5 of the Sewage Facilities Act also indicates that mandatory planning is not designed merely to correct deficient municipal facilities, as is The Clean Streams Law, but that its purpose is also to improve all present and future facilities.[3]

Our conclusion here, therefore, is that the revision procedures of the Sewage Facilities Act provide an exclusive procedural course for a municipality which finds its official approved plan to be unsuitable, and this conclusion is similarly mandated by Section 1933 of the Statutory Construction Act of 1972, 1 Pa. C.S. §1933, which provides:

Whenever a general provision in a statute shall be in conflict with a special provision in

---

[3] Section 5 of the Sewage Facilities Act, 35 P.S. §750.5 provides:

(d) Every official plan shall:

(1) Delineate areas in which community sewage systems are now in existence, areas experiencing problems with sewage disposal including a description of said problems, areas where community sewage systems are planned to be available within a ten year period, areas where community sewage systems are not planned to be available within a ten year period and all subdivisions existing or approved.

. . . .

(4) Take into consideration all aspects of planning, zoning, population estimates, engineering and economics so as to delineate with all practical precision those portions of the area which community systems may reasonably be expected to serve within ten years, after ten years, and any areas in which the provision of such services is not reasonably foreseeable. . . .

the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision. . . .

Because the specific revision procedure prescribed under the Sewage Facilities Act cannot be reconciled with the general appellate process applicable under The Clean Streams Law, we must conclude that the former procedure provides an exception to the generally applicable appellate procedure, and is, therefore, the exclusive manner for a municipality to contest or change the substance of its official, approved plan.

While this Court would have jurisdiction to review a determination of the Board involving a municipality's appeal from the DER's disapproval of a plan or the DER's disapproval of a revision, no such disapproval is involved here. Absent any attempt by the Township here to revise its official plan, therefore, we must also conclude that the Township here has not exhausted its administrative remedies under the Sewage Facilities Act, and cannot appeal the DER's order to implement its plan. Accordingly, the Board improperly heard the Township's appeal of the DER's implementation order, and the Board's order must be vacated.

## ORDER

AND Now, this 21st day of January, 1980, having considered the failure of the petitioner to implement its comprehensive sewage facilities plan pursuant to the order of the Department of Environmental Resources dated March 11, 1977, and having considered the failure of the petitioner to exhaust its administrative remedies regarding such plan, judgment is entered as follows:

THAT the order of the Environmental Hearing Board, Number 77-037-W, dated September 5, 1978, is hereby vacated, and

THAT the order of this Court dated January 3, 1979, which, pending this appeal, granted to the petitioner a supersedeas to the said order of the Department of Environmental Resources, shall hereby become inoperative.

This decision was reached prior to the expiration of the term of office of Judge DiSALLE.